UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| K.L.R. by and through his Guardian ad litem, Jaymisha Jones, KENNETH ROSS SR., and FOUZIA ALMAROU, <br><br> Plaintiffs, <br><br> v. <br><br> THE CITY OF GARDENA and SERGEANT MICHAEL ROBBINS, <br><br> Defendants. | Case No.: CV 18-04908-CJC (ASx) <br><br> ORDER GRANTING UNOPPOSED PETITION FOR COMPROMISE OF DISPUTED CLAIM OF MINOR [Dkt. 114] |

## I.     INTRODUCTION & BACKGROUND

This civil rights action arises from the death of Kenneth Ross Jr. ("Ross Jr."), who was shot and killed by Sergeant Michael Robbins ("Robbins") on April 18, 2018 in Gardena, California. (Dkt. 51 [Second Amended Complaint, hereafter "SAC"] ¶ 1.) That day, the Gardena Police Department received a report of gunshots being fired near 12812

Van Ness Avenue.  (*Id*. ¶ 25.)  The report indicated that the suspect in the shooting was "a male with long dreadlocks wearing shorts" who was running south on Van Ness Avenue.  (*Id*. ¶ 28.)  One officer spotted Ross Jr.—who matched the description of the suspect—running in Rowley Park, about a quarter of a mile away from the location of the reported shooting.  (*Id*. ¶ 30.)  The officer announced Ross Jr.'s whereabouts over her police radio.  (*Id*.)  A second officer soon arrived, pulled out his taser, and ordered Ross Jr. to stop running.  (*Id*. ¶ 31.)  Robbins arrived shortly thereafter, pointed an AR-15 rifle at Ross Jr., and threatened to shoot him.  (*Id*. ¶ 32.)  Despite these orders and threats, Ross Jr. continued to run away from the officers.  (*Id*. ¶ 33.)  According to the SAC, Ross Jr. did not make any aggressive movements and his hands were empty.  (*Id*. ¶¶ 33–34.)  Robbins, by contrast, asserts that at some point, Ross Jr. pointed a gun at him.  (*Id*. ¶ 41.)  Robbins fired his weapon at Ross Jr., striking him in the back and in the shoulder.  (*Id*. ¶ 35.)  Ross Jr. died at the scene.  (*Id*. ¶ 39.)

K.L.R. is an eight-year-old minor and Ross Jr.'s biological son.  (*Id*. ¶ 9; Dkt. 114 [Petition for Settlement Approval, hereafter "Pet."] at 2.)  Jaymisha Jones ("Jones") is K.L.R.'s biological mother and serves as guardian ad litem for K.L.R. in this action.  (Dkt. 114-3 [Declaration of Jamon R. Hicks, hereafter "Hicks Decl."] ¶ 3.)  On September 1, 2021, the parties filed a notice of settlement.  (Dkt. 112 [Notice of Settlement].)  On December 17, 2021, Jones, as guardian ad litem for K.L.R., filed the present unopposed petition, which seeks the Court's approval of the parties' settlement with respect to K.L.R.  (*See* Pet.)  For the following reasons, the petition is **GRANTED**.[1]

---

[1] Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing.  *See* Fed. R. Civ. P. 78; Local Rule 7-15.  Accordingly, the hearing set for this matter on January 24, 2022 is taken off calendar.

## II.  LEGAL STANDARD

District courts have a special duty to protect the interests of litigants who are minors.  *See Robidoux v. Rosengren*, 638 F.3d 1177, 1181 (9th Cir. 2011).  When the parties seek to enter into a settlement involving a minor, the Ninth Circuit has instructed district courts to "conduct [their] own inquiry to determine whether the settlement serves the best interests of the minor."  *Id.* (quoting *Dacanay v. Mendoza*, 573 F.2d 1075, 1080 (9th Cir. 1978)); *see also Salmeron v. United States*, 724 F.2d 1357, 1363 (9th Cir. 1983) (holding that "a court must independently investigate and evaluate any compromise or settlement of a minor's claims to assure itself that the minor's interests are protected, even if the settlement has been recommended or negotiated by the minor's parent or guardian ad litem").

District courts must limit their scope of review to whether the net amount distributed to the minor is fair and reasonable, in light of the facts of the case, the minor's specific claim, and recovery in similar cases.  *Robidoux*, 638 F.3d at 1181–82.  Courts should not evaluate the fairness of the recovery by comparing the minor's proportion of the total settlement value to the amount designated for competent co-plaintiffs or plaintiff's counsel.  *Id.* at 1182.  "So long as the net recovery to each minor plaintiff is fair and reasonable in light of their claims and average recovery in similar cases, the district court should approve the settlement as proposed by the parties."  *Id.*

## III.  ANALYSIS

### 1. Plaintiff's Net Recovery

The proposed total settlement amount is $1,575,000.  (Pet. at 5.)  $1,300,000 of that amount is allotted to K.L.R.  (*Id.*)  The remainder is allotted to K.L.R.'s co-plaintiffs.

(*Id.*) After a reduction for attorneys' fees and costs, K.L.R. will receive a net recovery of $854,342.18. (*Id.* at 7.) These funds will be paid to K.L.R. in the form of a structured payout, pursuant to a structured settlement annuity purchased from United of Omaha Life Insurance Company. (Dkt 114-2 [Addendum Describing Annuity and Payout Plan, hereinafter "Annuity Addendum"].)

Pursuant to the structured settlement annuity, K.L.R. will receive the following payments:

- Monthly payments of $2,000 for 12 years and 1 month, starting on October 12, 2031,[2] with a final payment on October 12, 2043;
- $25,000 lump sum payment on October 12, 2031;
- $75,000 lump sum payment on October 12, 2038;
- $150,000 lump sum payment on October 12, 2040;
- $200,000 lump sum payment on October 12, 2043; and
- $691,243.09 lump sum payment on October 12, 2048.

After all payouts are made, K.L.R. will have received $1,431,243.09, far more than the $854,342.18 he would recover if he were paid all at once. The Court finds that K.L.R.'s net recovery is fair, reasonable, in his best interest, and consistent with similar cases. When K.L.R. turns 18 years old and attends college, he will begin receiving $2,000 monthly to help cover his living expenses. (Pet. at 6.) He will also receive a total of $1,141,243.09 in lump sum payments from ages 18 to 35 to help him early on in his adult life. Courts regularly approve similar settlements for minor children whose parents were killed by police. *See, e.g.*, *S.A.C. by & through Velazquez v. Cty. of San Diego*, 2020 WL 6559139 (S.D. Cal. Nov. 9, 2020) (approving settlement in which $1,350,000 was allotted to minor and minor would receive $722,709 after attorney's fees and costs, to be paid into a structured settlement annuity); *Macedo v. Prewett*, No. CV-17-00897,

---

[2] K.L.R. will turn 18 years old on this date. (*See* Pet. at 2.)

Dkt. 59 (C.D. Cal. Apr. 5, 2019) (approving $1,350,000 settlement on behalf of two minors, each of whom would receive $387,439.25 after attorney's fees and costs, to be paid into a structured settlement annuity).

2. **Attorneys' Fees and Costs**

K.L.R.'s counsel also seeks approval of their fees and costs. (*See* Hicks Decl.) Central District of California Civil Local Rule 17-1.6 requires that any money recovered by a minor by settlement must be paid and disbursed in accordance with California Probate Code §§ 3600 *et seq*. In turn, California Probate Code § 3601 authorizes a court to direct that reasonable guardian expenses, costs, and attorneys' fees be paid from the money to be delivered for the benefit of the minor. *See also Goldberg v. Superior Court*, 23 Cal. App. 4th 1378, 1382 (1994) (noting that § 3601 "bestows broad power on the court to authorize payment from the settlement—to say who and what will be paid from the minor's money—as well as direct certain individuals to pay it"). When a lawyer represents a minor and recovers funds by way of settlement, California law requires a court to inquire into the reasonableness of attorneys' fees and costs. *Ojeda v. Sharp Cabrillo Hosp.*, 8 Cal. App. 4th 1, 17 (1992) (citing Cal. Prob. Code §§ 3600–01). Although *Robidoux* did not mandate a specific standard to evaluate the reasonableness of attorneys' fees, the Ninth Circuit held that district courts should not place undue emphasis on the amount of attorneys' fees when determining the plaintiff's recovery under a proposed settlement. 638 F.3d at 1181–82.

K.L.R.'s counsel requests fees in the sum of $433,290, or 33.33% of the $1,300,000.00 allotted to K.L.R., pursuant to a retainer agreement that provides for a 33.33% contingency fee. (Hicks Decl. ¶ 12.) The Court finds this amount reasonable. *See, e.g., S.A.C.*, 2020 WL 6559139 (approving attorneys' fees at 40%). K.L.R.'s counsel is quite experienced and accepted the risk of receiving nothing if this case was

lost. (*Id*. ¶ 13.) Counsel has litigated this case for over three years and has expended considerable effort in doing so, including reviewing and analyzing a wealth of evidence, exchanging written discovery, and partaking in two mediations. (Pet. at 3-4.) Most importantly, K.L.R.'s counsel achieved a significant successful result for K.L.R.: a $1,300,000 settlement.

K.L.R.'s counsel also requests costs totaling $12,367.82. (Hicks Decl. ¶ 12.) In support, K.L.R.'s counsel has submitted a spreadsheet itemizing costs. (Dkt. 114-1 [Cost Spreadsheet].) The Court has reviewed the spreadsheet and finds the costs reasonable. K.L.R.'s counsel incurred necessary expenses to vendors for various services, including the mediations, depositions, filing services, investigation services, expert services, in-house clerical services, and legal funding. (*See id*.)

## IV. CONCLUSION

For the foregoing reasons, the unopposed petition is **GRANTED**.  **IT IS HEREBY ORDERED THAT:**

1. The Court approves the $1,575,000 settlement, wherein $1,300,000 is allotted to K.L.R.;

2. The Court approves the attorneys' fees of $433,290.00 and costs of $12,367.82 to K.L.R.'s counsel, to be paid from the $1,300,000 allotted to K.L.R.;

3. The balance of $854,342.18 shall be allocated to K.L.R. and forwarded to United of Omaha Life Insurance Company for the purchase of a structured settlement annuity detailed in the Annuity Addendum; and

4. Pursuant to the payment plan detailed in the Annuity Addendum, K.L.R. shall receive the following payments:

    (a) $2,000 payable monthly for 12 years and 1 month beginning on October 12, 2031, and with a final payment on October 12, 2043; and

    (b) Lump sum payments in the following amounts and on the following dates:

        (i) $25,000 on October 12, 2031;

        (ii) $75,000 on October 12, 2038;

        (iii) $150,000 on October 12, 2040;

        (iv) $200,000 on October 12, 2043; and

        (v) $691,243.09 on October 12, 2048.

The Court shall retain jurisdiction to enforce this settlement.

DATED: December 28, 2021

_____
CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE

**CC: FISCAL**